# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
|                                      |     |                                                |
|--------------------------------------|-----|------------------------------------------------|
| DAVID HOSKINS, JR.,                  | \*  |                                                |
| Administrator of the Estate of       | \*  | No. 15-071V                                     |
| ANNABELLE HOSKINS, deceased,         | \*  |                                                |
|                                      | \*  | Special Master Christian J. Moran              |
| Petitioner,                          | \*  |                                                |
|                                      | \*  | Attorneys' fees and costs; expert fees;        |
| v.                                   | \*  | Dr. Kinsbourne                                  |
|                                      | \*  |                                                |
| SECRETARY OF HEALTH                  | \*  |                                                |
| AND HUMAN SERVICES,                  | \*  | Filed: July 12, 2017                           |
|                                      | \*  |                                                |
| Respondent.                          | \*  |                                                |
|                                      | \*  |                                                |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Nicholas E. Bunch, White, Getgey & Meyer, LPA, Cincinnati, OH, for Petitioner;
Debra A. Filteau Begley, U.S. Dep't of Justice, Washington, DC, for Respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

David Hoskins, Jr. sought compensation through the National Childhood Vaccine Compensation Program unsuccessfully. He is now seeking an award for attorneys' fees and costs. **He is awarded $40,864.28.**

\*     \*     \*

Represented by Attorney Nicholas E. Bunch, Mr. Hoskins filed his petition in January 2015. Mr. Hoskins developed his claim and filed reports from experts, as discussed below. After the case was set for a hearing, Mr. Hoskins decided not to pursue the claim. Thus, the proceedings concluded. Order, 2017 WL 1365126 (Mar. 8, 2017).

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

On April 21, 2017, Mr. Hoskins filed a motion requesting an award of attorneys' fees and costs.  The motion seeks a total of $45,574.28, comprised of $14,945.80 in attorneys' fees and $30,628.48 in attorneys' costs.  Mr. Hoskins did not incur any costs.

The Secretary filed a response to Mr. Hoskins's motion.  The Secretary represented that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  Resp't's Resp., filed May 16, 2017, at 2.  With respect to amount, the Secretary recommended "that the special master exercise his discretion" when determining a reasonable award for attorneys' fees and costs.  Id. at 3.

This matter is now ripe for adjudication.

\*        \*        \*

As a non-prevailing petitioner, Mr. Hoskins becomes eligible for attorneys' fees and costs by showing that he acted in good faith in filing the petition and that reasonable basis supported the claims alleged in the petition.  See 42 U.S.C. § 300aa–15(e)(1).  Here, the expert reports satisfy the reasonable basis standard and the Secretary has not challenged Mr. Hoskins's eligibility for fees.  Therefore, Mr. Hoskins will be awarded reasonable attorneys' fees and costs.  The unresolved question is what is a reasonable amount of attorneys' fees and costs?

## I.    Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.  Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

2

A.    <u>Reasonable Hourly Rate</u>

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  <u>Avera</u>, 515 F.3d at 1349.  There is, however, an exception (the so-called <u>Davis County</u> exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' local rates are substantially lower.  <u>Id.</u> 1349 (citing <u>Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency</u>, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In this case, all of the attorney's work was done outside of the District of Columbia.

Thus, under <u>Avera</u>, the determination of an attorney's hourly rate is a three-step process.  "First, the hourly rate in the attorneys' local area must be established.  Second, the hourly rate for attorneys in Washington, DC must be established.  Third, these two rates must be compared to determine whether there is a very significant difference in compensation."  <u>Masias v. Sec'y of Health & Human Servs.</u>, No. 99-697V, 2009 WL 1838979, at *4 (Fed. Cl. Spec. Mstr. June 12, 2009) (citing <u>Avera</u>, 515 F.3d at 1353 (Rader, J. concurring)), <u>mot. for rev. denied</u> (slip op. Dec. 10, 2009), <u>aff'd</u>, 634 F.3d 1283 (Fed. Cir. 2011), <u>corrected</u>, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013).

Mr. Hoskins requests compensation for two people.  The primary person is his attorney, Mr. Bunch.  For work in this case, Mr. Bunch has charged $375.00 to $405.00 per hour for work from 2014 through 2017, inclusive.  The second person is a paralegal who has charged $85.00 to $100.00 per hour.  Mr. Hoskins did not specify whether he was claiming that Mr. Bunch should be compensated at forum rates or local (Cincinnati, Ohio) rates.

The undersigned finds that the proposed rates for Mr. Bunch are reasonable.  Mr. Bunch's proposed rates are consistent with the outcome in <u>Jones v. Sec'y of Health & Human Servs.</u>, No. 13-279V, 2016 WL 7233938 (Fed. Cl. Spec. Mstr. Nov. 18, 2016).  There, a special master based a finding of an attorney's reasonable hourly rate for work performed in the Vaccine Program on hourly rates judges in the Southern District of Ohio found in 1983 and increased periodically using an inflation rate.  See <u>Lee v. Javitch, Block & Rathbone, LLP</u>, 568 F. Supp. 2d 870, 876 (S.D. Ohio 2008).  These rates are known as the "Rubin Committee" rates.  The special master did not accept the Rubin Committee rates wholesale.  Rather, the special master reduced the Rubin Committee rates because the Rubin Committee rates have tended to be awarded pursuant to fee-shifting statutes in which the party must prevail to be eligible for fees.  Because the Vaccine Act does

not impose this requirement, a reasonable hourly rate is less than the Rubin Committee rates.  Jones, 2016 WL 7233938, at *3.  Under these circumstances, the special master found that a reasonable rate for work in the Vaccine Program for an attorney with 32 years of experience in 2016 was $382.54 per hour.  The special master also found that a reasonable hourly rate for this attorney's work in Washington, DC was $385.00 per hour.  Id. at *4, citing McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), mot. for reconsid. denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  Finally, the special master found that the difference between the local rate ($382.54) and the forum rate ($385.00) was not significant.  Therefore, the special master awarded the similarly situated attorney forum rates.

The undersigned is not entirely convinced that the Rubin Committee rates are the most reliable foundation for setting hourly rates for attorneys from Cincinnati, Ohio.  Contrary information comes from a publication the State Bar of Ohio issued, showing that the median hourly billing rate for attorneys from Cincinnati in 2012 was $300 per hour.  This information could be the basis for an argument that the Rubin Committee rates are too high.  However, the Secretary has neither offered the State Bar of Ohio publication as evidence, nor made any argument about its significance.

Therefore, the rates proposed for Mr. Bunch are reasonable.[2]  Likewise, the proposed rates for the paralegal, which are actually lower than the forum rates for paralegal work, are accepted as well.

B.    Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours.  Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  The Secretary also did not directly challenge any of the requested hours as unreasonable.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See Shea v. Sec'y of Health & Human Servs., No. 13-737V, 2015 WL 9594109, at *2 (Fed. Cl. Spec. Mstr. Dec. 10,

---

[2] For 2016, Mr. Bunch requested compensation at a rate of $395.00 per hour.  This rate is slightly higher than the rate awarded in Jones, which was $385.00 per hour.  Mr. Bunch's experience in the Vaccine Program and the quality of his representation justify this relatively trivial difference.

2015) ("special masters are not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination … and certainly need not do so when Respondent has not attempted to highlight any specific alleged inefficiencies").

Here, Mr. Bunch's time records provide an adequate basis for understanding his activities. His activities are reasonable.

The paralegal's activities, however, are less reasonable. Almost all of the paralegal's time was spent on scanning, paginating, and filing records — clerical activities for which neither an attorney nor a paralegal should charge. See Guerrero v Sec'y Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), mot. for rev. denied in relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016). Consequently, $600 is deducted from the request for attorneys' fees.

For these reasons, Mr. Hoskins is awarded $14,345.80 in attorneys' fees.

## II.   Costs

In addition to seeking an award for attorneys' fees, Mr. Hoskins seeks compensation for costs expended, in the sum of $30,628.48. The costs for routine items, such as medical records and the filing fee, are reasonable. Mr. Hoskins is awarded these costs ($1,973.48) in full.

The balance ($28,655.00) is for the work of four experts. They are: Dr. Balko ($5,580.00), Dr. Gershwin ($2,500.00), Dr. Levin ($10,125.00), and Dr. Kinsbourne ($10,450.00). The process for determining a reasonable fee for an expert is the same lodestar process used to determine a reasonable fee for an attorney: a reasonable hourly rate multiplied by a reasonable number of hours. The experts are discussed in the order in which Mr. Hoskins retained them.

Dr. Balko. The first expert Mr. Hoskins retained was Dr. Balko, a neuropathologist. Dr. Balko wrote a very brief letter and a report. Dr. Balko generally opined that Annabelle's death should not be characterized as a SIDS death, and opined that the vaccinations caused her death because there was no other potential cause. However, he did not provide a medical theory proposing how vaccinations could have led to Annabelle's death. Exhibits 15, 18.

Dr. Balko has charged $450.00 per hour and spent 12.4 hours on this case. His hourly rate and the number of hours are reasonable. Mr. Hoskins is awarded $5,580.00 for Dr. Balko's work.

Dr. Gershwin. The second expert Mr. Hoskins retained was Dr. Gershwin, whom Mr. Bunch consulted in July 2015. In the next month, Dr. Gershwin spent 8.5 hours looking at medical records, the pathology report, and published literature about SIDS. For unknown reasons, Dr. Gershwin did not prepare a report.

Dr. Gershwin requests compensation at a rate of $500 per hour. Dr. Gershwin has appeared in Vaccine Program cases several times. He is board-certified in internal medicine, rheumatology, and immunology. See Rosof v. Sec'y of Health and Human Servs., No. 14-766V, 2017 WL 1649802 (Fed. Cl. Spec. Mstr. Mar. 31, 2017). His proposed hourly rate is reasonable.

As for the number of hours, Dr. Gershwin has voluntarily reduced the number of hours from 8.5 to 5 hours, as a courtesy. Dr. Gershwin also spent an unspecified amount of time in communications with Mr. Bunch for which Dr. Gershwin has not charged. This reduction is effectively a discount of approximately 40 percent.

Dr. Gershwin demonstrated sound billing judgment. The amount that he has requested ($2,500) is awarded in full.

Dr. Levin. The third expert is Dr. Levin. Dr. Levin has a background in immunology and practiced immunology in the 1970's. He worked in the "private practice of medicine" from 1981-1993. Starting in 1997, he practiced law. He is married to Vera Byers, another doctor who has appeared in Vaccine Program cases. Exhibit 21 (curriculum vitae).

Dr. Levin wrote one report. He filled a gap in Dr. Balko's opinion by proposing a theory by which the vaccinations could have caused Annabelle's death. Exhibit 20.

Dr. Levin has charged $450 per hour. Mr. Hoskins has not supported the hourly rate for Dr. Levin. In a case decided in 2009, Dr. Levin was compensated at a rate of $300 per hour. Friedman v. Sec'y of Health & Human Servs., No. 02-1467V, 2009 WL 4975267, at *14 (Fed. Cl. Spec. Mstr. Oct. 21, 2009), mot. for rev. denied, 94 Fed. Cl. 323 (2010). Using an inflation calculator at the Bureau of Labor Statistics website, this rate is worth approximately $337.00 per hour in

February 2016, when Dr. Levin performed his work in this case.  Given Dr. Levin's overall experience, the quality of his work, and his efficiency, $337.00 per hour is reasonable.

Dr. Levin has requested compensation for 22.5 hours of work.  Dr. Levin could have provided more detail in his invoice by dividing his work into more discrete tasks because experts are expected to list the amount of time they spent on particular activities.  See Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 781-83 (2013); Morse v. Sec'y of Health & Human Servs., 89 Fed. Cl. 683 (2009).  For example, rather than include "reviewing literature" with other items that took 5 hours to accomplish, Dr. Levin should have separated this task and specified the articles that he read.  In addition, Dr. Levin spent at least four hours on tasks that are clerical in nature, including locating reprints of articles and opening them.  A person who charged a lower hourly rate could have performed these tasks.  Nevertheless, because Dr. Levin is being compensated at a lower hourly rate, which accounts for some inefficiency, no additional adjustment to the proposed number of hours is needed.

For these reasons, Mr. Hoskins is awarded $7,582.50 for Dr. Levin's work.

Dr. Kinsbourne.  The final expert Mr. Hoskins retained was Dr. Kinsbourne.  Once, Dr. Kinsbourne was a prominent pediatric neurologist.  However, he stopped practicing medicine decades ago.

While his retirement from the active practice of medicine has not prevented Dr. Kinsbourne from testifying in Vaccine Program cases, some special masters have expressed concerns about the usefulness of his expert testimony.  See Pope v. Sec'y of Health & Human Servs., No. 14–078V, 2017 WL 2460503, at *21 (Fed. Cl. Spec. Mstr. May 1, 2017); Snyder v. Sec'y of Health and Human Servs., No. 07-59V, 2011 WL 3022544, at *21 (Fed. Cl. Spec. Mstr. May 27, 2011), mot. for rev. granted, 102 Fed. Cl. 282 (2011), reinstated, 553 F. App'x 994, 1001 (Fed. Cir. 2014) (indicating that the special master was not arbitrary in considering Dr. Kinsbourne's lack of recent practice of medicine); Snyder v. Sec'y of Health and Human Servs., No. 01-162V, 2009 WL 332044, at *12 (Fed. Cl. Spec. Mstr. Feb. 12, 2009) (indicating that Dr. Kinsbourne suffers from the "stigma" of being a professional expert), mot. for rev. denied, 88 Fed. Cl. 706 (2009).  These factors should have caused Mr. Hoskins and his attorney to pause before retaining Dr. Kinsbourne.

Mr. Hoskins justifies the retention of Dr. Kinsbourne. To Mr. Hoskins, Dr. Kinsbourne brought experience as a doctor who could explain how vaccines affect an infant's brain. He further defends Dr. Kinsbourne as expressing his own opinion, not one dependent on either Dr. Balko or Dr. Levin. Pet'r's Status Rep., filed June 14, 2017.

The undersigned finds that Dr. Kinsbourne's contributions to Mr. Hoskins's case were marginal, yet sufficient to warrant some compensation. Before Dr. Kinsbourne worked on this case, Dr. Balko presented a report in which he determined that Annabelle's death was not due to SIDS. Exhibit 18. Dr. Kinsbourne's opinion on this point is, therefore, duplicative. In addition, while Dr. Kinsbourne was preparing his opinion, he also reviewed the opinion of Dr. Levin, who had offered a mechanism to explain how vaccines can cause a death. Dr. Kinsbourne, in his word, "rel[ied]" on Dr. Levin. Exhibit 22 at 4. Thus, Dr. Kinsbourne does not add to the mechanism of injury. The undersigned's notes reflect that in the April 12, 2016 status conference, he informed the parties that Dr. Kinsbourne did not advance the case significantly.

While Dr. Kinsbourne largely repeated the opinion of other experts, he did add a little. He cited four epidemiological studies that none of petitioner's other experts had brought forward. Exhibit 22 at 4.

Under these circumstances, the undersigned will give the petitioner the benefit of the doubt and compensate Dr. Kinsbourne. However, attorneys representing petitioners are placed on notice that compensation for Dr. Kinsbourne should not be assumed automatically.

With respect to the amount of compensation, Dr. Kinsbourne requests $500 per hour for 20.9 hours of work. Dr. Kinsbourne has been awarded this hourly rate in the past and $500 per hour is reasonable for the work of a (retired) pediatric neurologist.

However, Dr. Kinsbourne has not adequately explained his activities. He has multiple entries that simply list a certain number of emails in a month for which he has charge 0.1 hours per email. However, Dr. Kinsbourne has not described the content of the emails. The lack of detail from Dr. Kinsbourne is particularly noticeable for January 2016 in which Dr. Kinsbourne has charged for 26 emails. But, in January 2016, Mr. Bunch and his paralegal list correspondence with Dr. Kinsbourne on only a single day (January 25, 2016) for less than 30 minutes.

Without more detail from Dr. Kinsbourne, assessing the reasonableness of his activities is not possible.  Were some activities clerical for which Dr. Kinsbourne should have charged a reduced rate?  Did any activities take an excessive amount of time?  Due to the vagueness in Dr. Kinsbourne's entries, his time is reduced by 15 percent.

Consequently, Mr. Hoskins is awarded $8,882.50 for Dr. Kinsbourne's work.

Summary.  Of the amount requested in costs ($30,628.48), Mr. Hoskins is awarded $26,518.48.

\* \* \*

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e).  The undersigned finds $40,864.28 ($14,345.80 in fees and $26,518.48 in costs) to be a reasonable amount for all attorneys' fees and costs incurred.  The undersigned GRANTS the petitioner's motion and awards $40,864.28 in attorneys' fees and costs.  This shall be paid as follows:

**A lump sum of $40,864.28 in the form of a check made payable to petitioner and petitioner's attorney, Nicholas E. Bunch of White, Getgey & Meyer, LPA, for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.